UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| COREY A. H.[1], | ) |
|            Plaintiff, | ) |
| v. | ) Case No. 1:21-cv-023 |
| KILOLO KIJAKAZI[2], | ) |
| Acting Commissioner of Social Security, | ) |
|            Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Corey H., on January 18, 2021. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Corey H., filed an application for Disability Insurance Benefits, alleging a disability onset date of April 30, 2014. (Tr. 152). The Disability Determination Bureau denied Corey H.'s application initially on December 28, 2016, and again upon reconsideration on April 19, 2017. (Tr. 173, 180). Corey H. subsequently filed a timely request for a hearing on June 26, 2017. (Tr. 183). A hearing was held on May 15, 2018, before Administrative Law Judge (ALJ) Stephanie Katich. (Tr. 152). Vocational Expert (VE) Sharon Ringenberg also appeared at the hearing. (Tr. 71). The ALJ issued an unfavorable decision on August 24, 2018. (Tr. 152-63).

On May 21, 2019, the Appeals Council remanded the case back to the ALJ, finding that

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

there was new evidence that the ALJ had not considered which included relevant information related to Corey H.'s ankle impairment. (Tr. 170-71). This new evidence included an opinion from a treating source. (Tr. 170). The Appeals Council ordered the ALJ to give further consideration to Corey H.'s residual functional capacity (RFC), including evaluating the treating source opinion. (Tr. 170). The Appeals Council also ordered the ALJ to obtain supplemental evidence from the VE if warranted by the expanded record. (Tr. 171). A second hearing was held on May 21, 2020, before ALJ Stephanie Katich. (Tr. 37). VE Marie Barhydt also appeared at the hearing. (Tr. 37). The ALJ issued an unfavorable decision on July 22, 2020. (Tr. 16-30). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 2-7).

First, the ALJ found that Corey H. last met the insured status requirements of the Security Act on December 31, 2016. (Tr. 18). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Corey H. did not engage in substantial activity from April 30, 2014, his alleged onset date, through December 31, 2016, his date last insured. (Tr. 18).

At step two, the ALJ determined that Corey H. had the following severe impairments: right shoulder disorders (including degenerative changes, a partial tear of the rotator cuff, and tendinopathy); right ankle disorders (including osteochondral lesions, osteochondritis dissecans, osteochondral fracture, degenerative changes, tenosynovitis, tendinosis, and arthrosis); status post multiple right ankle surgeries (including arthroscopic synovectomy and debridement in January 2014, medial malleolar osteotomy with grafting of the talar dome lesion and repair of the syndesmotic ligament in March 2015, and repair of the anterior talofibular and calcaneofibular ligaments in April 2015, as well as right ankle surgery in or around 1993); and obesity. (Tr. 18).

The ALJ found that the above medically determinable impairments significantly limited Corey H.'s ability to perform basic work activities. (Tr. 19). Corey H. also alleged disability due to fatty liver, diabetes mellitus, irritable bowel syndrome, allergies, headaches, tinnitus, sensorineural hearing loss, hyperlipidemia, psoriasis, sleep apnea, insomnia, alcohol dependence/abuse, right hip pain, right knee pain, and gulf war syndrome. (Tr. 19). However, the ALJ indicated that these impairments caused no more than minimal limitations on his ability to engage in basic work activities, and therefore she considered them non-severe. (Tr. 19).

At step three, the ALJ concluded that Corey H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 23). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 423-).

After consideration of the entire record, the ALJ then assessed Corey H.'s residual functional capacity (RFC) as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he could not climb ladders, ropes, or scaffolds. He also could not kneel and he could only occasionally reach overhead with his right (nondominant) upper extremity. In addition, he could occasionally climb ramps and stairs, balance, stoop, crouch, and crawl. He also needed to avoid all exposure to wet, slippery, or uneven surfaces and terrain and he needed to occasionally use a cane (holding it in one upper extremity) during ambulation.

(Tr. 24). The ALJ explained that in considering Corey H.'s symptoms, she followed a two-step process. (Tr. 24). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could have been expected to produce Corey H.'s pain or other symptoms. (Tr. 24). Then she evaluated the intensity, persistence, and limiting effects of

3

the symptoms to determine the extent to which they limited Corey H.'s functioning. (Tr. 24).

After considering the evidence, the ALJ found that Corey H.'s medically determinable impairments reasonably could have caused some symptomology. (Tr. 25). However, she found that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 25).

At step four, the ALJ found that through the date last insured, Corey H. was unable to perform any past relevant work. (Tr. 28). However, the ALJ found jobs that existed in significant numbers in the national economy that Corey H. could perform. (Tr. 29). Therefore, the ALJ found that Corey H. had not been under a disability, as defined in the Social Security Act, from April 30, 2014, through December 31, 2016. (Tr. 30).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); **Moore v. Colvin**, 743 F.3d 1118, 1120–21 (7th Cir. 2014); **Bates v. Colvin**, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting **Consol. Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* **Bates**, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no

errors of law.  ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. § 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability.  **20 C.F.R. § 404.1520**.  The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity."  **20 C.F.R. § 404.1520(b)**.  If he is, the claimant is not disabled, and the evaluation process is over.  If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities."  **20 C.F.R. § 404.1520(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work.  If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled.  **20 C.F.R. § 404.1520(e)**.  However, if the claimant shows that his

impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Corey H. has requested that the court remand this matter for additional proceedings. In his appeal, Corey H. has argued that the ALJ's RFC was not based upon substantial evidence. Corey H. specifically alleges that the ALJ erred in evaluating the medical opinions in the RFC analysis.

Of the two arguments, the court finds it necessary to address only the first. Corey H. asserts that the ALJ improperly and repeatedly mischaracterized evidence in disregarding his subjective symptoms and portions of medical opinions. In coming to her conclusion that he was not disabled, Corey H. asserts that the ALJ improperly relied on muscle strength in his right ankle which graded at no worse than 4/5 and no evidence of reflex or sensory deficits, significant atrophy, reduced in grip strength, or reduced fine finger manipulative ability. (Tr. 26-28).

The ALJ found Corey H.'s reports of pain and struggles with daily activities to be inconsistent with the medical evidence. (Tr. 25). Specifically, the ALJ noted that despite claiming a decreased range of motion in his right ankle, clicking in his right ankle, an antalgic/abnormal gait, and tenderness to his right ankle, Corey H.'s muscle strength was "almost always" graded at no worse than 4/5, and the record did not contain evidence of reflex deficits,

sensory deficits, or significant atrophy during the relevant period.  (Tr. 26).

The ALJ gave portions of multiple medical opinions little weight, finding that they were "not supported by or consistent with the claimant's lack of muscle atrophy, lack of significant muscle strength deficits, lack of reflex and sensory deficits, and lack of more than occasional use of an assistive device for ambulation during the period at issue in this decision." (Tr. 27).  The ALJ used these findings to discredit Dr. Jonathon V.N. Norton's opinion that Corey H. could drive only one hour per day, as well as to discredit Dr. Bradley R. Hammersley's opinion that Corey H. could not do any climbing, squatting, standing, or walking.  (Tr. 27).  The ALJ also used these findings to discredit Dr. Holly K. Becker's opinion that Corey H. needed a cane and a brace to walk, that he was not able to stand or walk for short or prolonged activities, and that he could not squat or kneel.  (Tr. 28).

Corey H. asserts that relying on this factual evidence is irrelevant, as he was not asserting that his functional limitations were due to, nor did his general symptoms include, muscle deficits, muscle atrophy, or diminished senses or reflexes.  Additionally, he claims that the ALJ's finding that his right ankle impairments were due in part to osteochondral lesions[3] and dissecans[4] was illogical because neither condition is marked by reduced muscle strength, muscle atrophy, or diminished sensation or reflexes.  Rather, the symptoms consistent with his conditions were corroborated by the medical evidence, which the ALJ acknowledges.  The ALJ acknowledges that Corey H. had decreased range of motion in his right ankle, clicking in his ankle, guarding of

---

[3] Osteochondral lesions occur when there is softening of the cartilage layers, cyst-like lesions within the bone below the cartilage, or a fracture of the cartilage and bone layers. Symptoms include persistent pain, along with "severe locking or catching symptoms, where the ankle freezes up and will not bend."  *What are Osteochondral Lesions?*, FOOTCAREMD, https://www.footcaremd.org/conditions
treatments/ankle/osteochondral-lesion (last visited March 17, 2022).
[4] Osteochondritis dissecans occurs when bone underneath the cartilage of a joint dies due to lack of blood flow. Symptoms include pain, swelling, joint popping or locking, and a feeling as though your joint is "giving way." *Osteochondritis Dissecans*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/osteochondritis-dissecans/symptoms-causes/syc-20375887 (last visited March 17, 2022).

7

his ankle, an antalgic/abnormal gait, and tenderness. (Tr. 26). This evidence was consistent with the diagnosed impairments and would support Corey H.'s allegations of pain and struggles with standing and walking, as well as difficulties with stairs, squatting, bending, and kneeling. (Tr. 25).

The ALJ improperly relied on relatively normal findings unrelated to Corey H.'s impairments to discredit both his subjective symptoms and portions of medical opinions. *See* **Clark v. Saul**, 2021 WL 164794, at *4 (N.D. Ind. Jan. 19, 2021). There is no evidence in the record that diminished muscle strength, muscle atrophy, diminished sensation, or diminished reflexes were necessary or sufficient medical signs and symptoms of Corey H.'s ankle impairments. There was also no indication from any of Corey H.'s providers that a lack of muscle strength, muscle atrophy, diminished sensation, or diminished reflexes was indicative of healing or improvement. "Instead, these factors appear to have come entirely from the ALJ's own medical opinions." **Clark**, 2021 WL 164794, at *4. The ALJ appears to be playing doctor, something expressly prohibited by case law. *See* **Rohan v. Chater**, 98 F.3d 966, 970 (7th Cir. 1996). The medical records repeatedly indicate "clicking," pain while ambulating, pain and tenderness, and limited range of motion. (Tr. 853, 862, 888, 959).

Related to the ALJ's mischaracterization of Corey H.'s right ankle impairment, the ALJ also erred in evaluating multiple medical opinions. The ALJ weighed the medical opinions of the state agency physicians, Dr. Norton, Dr. Hammersley, Dr. Alexis M. Echevarria, and Dr. Marc D. Wooten using the same criteria to measure their validity. The ALJ relied on medical evidence indicating a lack of muscle atrophy, lack of muscle strength deficits, lack of reflex and sensory deficits, and the lack of more than occasional use of a cane for ambulation. (Tr 27). The ALJ used these criteria as a justification for finding portions of the medical opinions consistent

with evidence in the record, but at the same time, she found other portions of the same opinions to be inconsistent. (TR. 27). However, as discussed above, the ALJ failed to explain how a lack of muscle atrophy or muscle strength deficits was consistent with Corey H.'s diagnosed impairments. The ALJ's use of these criteria as the standard against which she measured medical opinions was in error. The ALJ improperly relied on what was not in evidence without acknowledging the pain and other symptoms noted in the record when coming to her decision in this case.

An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Medical opinions from treating sources may be given controlling weight in some circumstances.[5] **20 C.F.R. § 404.1527(c)(2)**. For all other medical opinions, the ALJ must assign weight after considering the following factors: examining relationship; length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; whether the medical opinion is supported by medical signs and laboratory findings; consistency with the record as a whole; specialization of the medical source; and any other factors that tend to support or contradict the medical opinion. **20 C.F.R. § 404.1527(c)**. The weight assigned to the non-examining sources will depend on the degree to which their opinions considered the pertinent evidence in the claim, including medical opinions of treating and other examining sources. **20 C.F.R. § 404.1527(c)(3)**.

The ALJ gave the opinion of Corey H.'s treating podiatrist, Dr. Becker, little weight. (Tr. 28). The ALJ noted that the opinion was given in March 2017, three months after the date last insured. (Tr. 28). The ALJ again relied on a lack of muscle atrophy or significant muscle strength deficits prior to the date last insured, and ultimately found that Corey H.'s right ankle

---

[5] The regulations have changed for claims filed on or after March 27, 2017. *See* **20 C.F.R. § 404.1520c**. However, Corey H. filed his claim on November 8, 2016, and therefore **20 C.F.R. § 404.1527(c)** applies here.

impairment did not appear to worsen until early 2017, which was after the date last insured. (Tr. 28). The ALJ erred by using a lack of muscle atrophy or muscle strength to weigh Dr. Becker's opinion. She also erred because she mischaracterized Dr. Becker's findings when discussing his opinions in her decision.

In June 2016, six months prior to his date last insured, medical records show that Corey H. presented to Dr. Becker with pain on palpation to the lateral and medial gutters and the right retromalleolar PT tendon course. (Tr. 888). He also showed limited range of motion to two of the joints, as well as clicking in the ankle joint, had positive equinus[6], and guarding noted in two right ankle joints. (Tr. 888). Dr. Becker did note manual muscle testing of 5/5, yet she still noted pain, clicking, limited range of motion, and guarding. (Tr. 888). Two months later, in August 2016, Dr. Becker again noted pain on palpation to the lateral and medial gutters and the right retromalleolar PT tendon course. (Tr. 862). She also noted pain and resisted range of motion, as well as "clicking", and positive equinus and guarding, despite Corey H. scoring of 5/5 on manual muscle testing in all major muscle groups. (Tr. 862). Worst of all, Dr. Becker stated that Corey H.'s "right ankle ha[d] shown signs of worsening and the prognosis of the ankle improving [wa]s not likely." (TR. 862). As a result, she discussed conservative versus surgical treatment and noted that Corey H. opted for conservative treatment at that time, so she prescribed a custom ankle brace. (TR. 862).

The ALJ erred in relying solely on a lack of muscle atrophy or muscle strength deficits prior to December 31, 2016, in finding that Corey H.'s ankle impairment did not worsen prior to 2017. Medical records from 2016 showed continued evidence of symptoms associated with Corey H.'s diagnosed impairments, Dr. Becker's finding that his ankle injury was worsening,

---

[6] Positive equinus results in limited range of motion when flexing the foot upwards. *Equinis*, FOOT HEALTH FACTS, https://www.foothealthfacts.org/conditions/equinus (last visited Mar. 3, 2022).

and improvement would be unlikely.  (Tr. 862).

The ALJ also used a lack of evidence of muscle atrophy, muscle strength deficits, and reflex or sensory deficits to weigh the opinions of Dr. Echevarria, Dr. Hammersley, and Dr. Wooten.  (Tr. 26-27).  This was in error, as the ALJ had not shown that a lack of muscle atrophy or lack of muscle strength was indicative of Corey H.'s diagnosed impairments.  Additionally, Dr. Echevarria noted significant exacerbation of ankle pain with repetitive use testing, weakened movement, excess fatigability, pain on movement, swelling, and disturbance of locomotion.  (Tr. 1518).  He further found ankylosis in the right ankle in plantar flexion, dorsiflexion, good weight-bearing position, and with abduction, adduction, inversion, or eversion deformity.  (Tr. 1519-20).  Yet the ALJ did not mention any of these findings.  This was also in error as those findings indicated other functional limitations.

The ALJ mentioned Dr. Wooten's opinion only briefly.  She stated that Dr. Wooten's opinion that Corey H. would have problems with lifting and carrying did not indicate that he would be unable to lift and carry 10 pounds occasionally and less than 10 pounds frequently.  (Tr. 27).  The ALJ found that consistent with evidence that showed a lack of muscle atrophy or significant muscle strength deficits.  (Tr. 27).  However, there was much more in Dr. Wooten's opinion that the ALJ ignored.  For example, on March 8, 2016, Dr. Wooten examined Corey H. and found reduced range of motion in both dorsiflexion and plantar flexion in the right ankle, which he indicated contributed to a functional loss, pain with weight bearing, "objective evidence of localized tenderness or pain on palpation" in the medial malleolus, and cephalad and distal to right ankle.  (Tr. 1528, 1530-31).  Dr. Wooten noted Corey H.'s 5/5 muscle strength in the right ankle, but he also found right ankle instability.  (Tr. 1534-35).  Corey H.'s imagining indicated degenerative or traumatic arthritis in the right ankle, and Dr. Wooten opined that his

11

right ankle impairment would impact his ability to perform occupation tasks.  (Tr. 1538, 1543). Specifically, he indicated that Corey H. would struggle with walking a long distance, standing a long time, running, going up and down stairs, and lifting and carrying things.  (Tr. 1543).  Yet the ALJ did not discuss these findings and, instead, simply noted that Dr. Wooten's failure to indicate whether Corey H. would struggle lifting 10 pounds was consistent with a lack of muscle atrophy or reduced muscle strength.  This is in error, as the ALJ did not adequately discuss Dr. Wooten's medical opinion according to the regulation.  *See* **20 C.F.R. § 404.1527(c)**.

Corey H. has made other arguments regarding medical opinion evidence, limitations in the RFC, and his mental impairments.  However, because the ALJ erred in failing to properly analyze his right ankle impairment and the medical opinion evidence, the court need not address the additional argument at this time.  The ALJ's dismissal of opinion evidence and subjective symptoms based on irrelevant evidence, as well as her failure to properly consider opinion evidence, may alter the view of the RFC and other medical opinion evidence.  The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

ENTERED this 21st day of March, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge